UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD Z. SOUZA,<br><br>       Plaintiff,<br><br>   v.<br><br>VAID, et al.,<br><br>       Defendants. | Case No. 21-cv-08893-PCP<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 24 |

Richard Souza, a California prisoner proceeding *pro se*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Mr. Souza alleges that defendants Dr. Vaid and Nurse Flores were deliberately indifferent to Mr. Souza's serious medical needs by over-prescribing the antibiotic Keflex before and after Mr. Souza contracted a Clostridium Difficile ("C. diff") infection.

Defendants have moved for summary judgment. Dkt. No. 24 ("MSJ"). Although given the opportunity, Mr. Souza did not file an opposition.

For the reasons stated below, Defendants' motion for summary judgment is **GRANTED**.

**I.   BACKGROUND**

The following facts are undisputed unless otherwise indicated.

At all relevant times, Mr. Souza was incarcerated at Salinas Valley State Prison ("SVSP"). Defendant Vaid was employed as the primary care physician for inmates on the mental health yard at SVSP. Dkt. No. 24-2 ("Vaid Declaration"), at ¶ 4.[1] Defendant Flores worked as a nurse on the same yard. Dkt. No. 24-3 ("Flores Declaration"), at ¶ 2.

---

[1] The Court cites to declarations for ease of reading. The Court has compared each declaration to the underlying exhibits to ensure the declarations accurately describe the exhibits.

1  Mr. Souza developed multiple infections during 2019 and 2020. Vaid. Decl. ¶ 8. A variety
2  of physicians prescribed Keflex to treat these infections. *Id*. ¶ 7. Defendant Vaid prescribed Keflex
3  one of the seven times Mr. Souza received that medication and continued other doctors'
4  prescriptions twice. *Id*. ¶¶ 13–22.

**A.     Treatment before C. diff diagnosis**

- On December 7, 2019, Mr. Souza was prescribed Keflex by non-defendant Nurse Practitioner Erguiza. The following day, Mr. Souza was referred to Natividad Medical Center ("NMC"), an outside hospital. *Id*. Vaid Decl. ¶ 15. NMC diagnosed Mr. Souza with an infection, and prescribed Bactrim and Keflex. *Id*.

- On December 9, 2019, following his discharge from NMC, Mr. Souza met with Defendant Vaid. *Id*. ¶ 16. Defendant Vaid continued NMC's prescription of Bactrim and Keflex. *Id*.

- On December 26, 2019, Mr. Souza contracted an infection. *Id*. ¶ 17. Defendant Vaid prescribed Bactrim. *Id*.

- On March 19, 2020, non-defendant Dr. Gamboa referred Mr. Souza to NMC. NMC diagnosed Mr. Souza with an infection and prescribed Keflex. *Id*. ¶¶ 18–19. Following Mr. Souza's discharge from NMC, non-defendant Dr. Lam continued this Keflex prescription. *Id*. ¶ 20.

- On March 25, 2020, Mr. Souza had an appointment with Defendant Vaid. Defendant Vaid instructed Mr. Souza to finish the course of Keflex prescribed by non-defendant Dr. Lam. *Id*. ¶ 21.

- On May 7, 2020, Defendant Vaid met with Mr. Souza regarding an infection. *Id*. ¶ 22. Defendant Vaid prescribed Keflex to treat this infection. *Id*. Defendant Vaid also referred Mr. Souza to a specialist. *Id*. Non-defendant Dr. Singh states that Defendant Vaid's prescription of Keflex was medically acceptable. *See* Dkt. No. 24-4 ("Singh Declaration") ¶ 9.

- On May 11, 2020, Defendant Vaid had a follow-up appointment with Mr. Souza regarding an infection. Vaid Decl. ¶ 23. She determined that Keflex had not effectively treated his infection and changed his prescription to Ciproflaxin. *Id*.

2

- On July 24, 2020, non-defendant Dr. Singh met with Mr. Souza regarding an infection. Singh Decl. ¶ 7. Non-defendant Dr. Singh prescribed Keflex. *Id*.
- On October 6, 2020, non-defendant Dr. Javate met with Mr. Souza regarding an infection. Vaid Decl. ¶ 25. Non-defendant Dr. Javate prescribed Keflex. *Id*.
- On October 13, 2020, non-defendant Dr. Wong referred Mr. Souza to NMC for a suspected infection. *Id*. ¶ 26. Care providers at NMC diagnosed Mr. Souza with, among other things, a C. diff infection. *Id*. NMC treated Mr. Souza with oral Vancomycin and intravenous Ceftriaxone. *Id*.

### B. Treatment after C. diff diagnosis

- On October 20, 2020, Mr. Souza was discharged from NMC. NMC providers attempted to prescribe intravenous application of Vancomycin and Ceftriaxone for post-discharge treatment. *Id*. & Ex. O. Mr. Souza refused the catheter which was necessary to give these antibiotics intravenously. After Mr. Souza's refusal, NMC prescribed high-dose Keflex. *Id*.
- On October 20, 2020, following his discharge from NMC, non-defendant Dr. Wong met with Mr. Souza. *Id*. ¶ 27. Non-defendant Dr. Wong discontinued the Vancomycin treatment, but not the Keflex treatment ordered by NMC. *Id* & Ex. P.
- On October 30, 2020, Mr. Souza was referred back to NMC and again diagnosed with C. diff. *Id*. ¶ 28. NMC prescribed a ten-day course of Vancomycin, and Mr. Souza completed his course of Vancomycin before being discharged on November 10, 2020. *Id*. & Ex. Q ("Vancomycin 10-day course completed today. No further intervention planned.").
- On November 12, 2020, Mr. Souza met with Defendant Vaid. Mr. Souza complained of the side effects of taking antibiotics, and demanded opioid painkillers. *See id*., Ex. R. Defendant Vaid prescribed two non-opioid painkillers. *Id*. Defendant Vaid referred Mr. Souza to a specialist for his recurring infections. *See id*. ¶ 29.
- On November 17, 2020, Mr. Souza had another appointment with Defendant Vaid regarding digestive symptoms similar to those he suffered when diagnosed with C. diff. Defendant Vaid prescribed a ten-day course of Vancomycin. *Id*. ¶ 30.

- On December 11, 2020, Mr. Souza met with non-defendant Dr. Singh. *Id*. ¶ 31. Dr. Singh noted that Mr. Souza's digestive symptoms had resolved. Singh Decl. ¶ 8.

### C.   This lawsuit

Mr. Souza filed this lawsuit on or after November 4, 2021. *See* Compl. at 3 (signing the Complaint on that date). He initially sued "CEO Padilla" and Doe defendants for their handling of his grievances in addition to Defendants Vaid and Flores for their medical treatment. *See id*. at 1, 2.

The Court screened the Complaint pursuant to 28 U.S.C. § 1915A, and explained that Mr. Souza could not state a claim for the handling of his grievances. Dkt. No. 7, at 3–4. When Mr. Souza failed to amend his claim, the Court dismissed Defendant Padilla and the Doe defendants from this action. Dkt. No. 10.

In its screening order, the Court found only the following claim cognizable:

> Plaintiff alleges that on an unknown date in 2020, he contracted a disease called "clostridium (C. diff)"[2] which "led [him] to being rushed to the hospital with vomiting and diarrhea . . . as well as high fever." Dkt. 1 at 3. He claims this illness was "brought on by an overprescribing of antibiotics, one in particular [called] Keflex at least 7 times in 11 months, 4 of them by Defendant Dr. Vaid." *Id.* Plaintiff was "diagnosed with C. diff and placed on antibiotics with Vancomycin being the primary antibiotic to treat C. diff." *Id.* Plaintiff stayed in the hospital for six days, and he was then returned to SVSP. *Id.* Upon plaintiff's return to SVSP, defendant Vaid "placed [him] back on Keflex," even though plaintiff "told her the hospital said Vancomycin [was] what they ordered for [him]." *Id.* When Plaintiff "found himself getting sicker and sicker, [he] begged defendant Flores to follow up . . . [and] instead [he] was given double the dose of Keflex." *Id.* Plaintiff was again rushed to the hospital and "placed on [a] 10-day[] full course of Vancomycin." *Id.* When Plaintiff returned to SVSP, the hospital made sure he continued to receive Vancomycin. *Id.*
>
> Liberally construed, the complaint states a cognizable Eighth Amendment claim against defendants Vaid and Flores for deliberate indifference to plaintiff's serious medical needs.

Dkt. No. 7 at 2-3. The issue presented now is whether the evidence creates any material dispute as to whether Defendant Vaid over-prescribed Keflex to Mr. Souza with Defendant Flores's acquiescence.

4

## II. Legal standards

### A. Summary judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a typical summary judgment motion, a defendant moves for judgment against a plaintiff on the merits of his claim. In such a situation, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See id.* at 631.

### B. Deliberate indifference to serious medical needs

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response

5

to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). A prison official is deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060.

A claim of medical malpractice or negligence is insufficient to establish a violation of the Eighth Amendment. *Id.* at 1059. It is well-settled that a difference of opinion between a prisoner-patient and prison medical authorities regarding proper treatment does not amount to deliberate indifference. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).[2] Rather, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, such treatment was chosen in conscious disregard of an excessive risk to the plaintiff's health, and the choice resulted in harm to the plaintiff. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

**III.    Analysis**

Defendants argue that they did not exhibit deliberate indifference to Mr. Souza's medical needs. *See generally* MSJ. The Court views the facts in the light most favorable to Mr. Souza, the

---

[2] *See also Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) (a difference of opinion between the physician and the prisoner concerning the appropriate course of treatment does not amount to deliberate indifference to serious medical needs); *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (same); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference); *Sanchez v. Vild*, 891 F.2d 240, 241-42 (9th Cir. 1989) (same).

non-moving party. Even in this light, however, there is no evidence that Defendants were deliberately indifferent in their responses to Mr. Souza's medical needs.

### A. Defendant Vaid

In his Complaint, Mr. Souza claims that Defendant Vaid prescribed him Keflex four times before his C. diff diagnosis, and again after his first C. diff diagnosis, even though "Keflex [was] the very same antibiotic that made [him] ill." Compl. at 3–4. Mr. Souza's medical records reveal this to be false. Defendant Vaid initially prescribed Keflex once, when Mr. Souza presented an infection on May 7, 2020. Vaid Dec. ¶ 22. On two other occasions, Defendant Vaid continued a course of Keflex treatment initially prescribed by NMC and by non-defendant Dr. Lam. *See* Vaid Decl. ¶¶ 13–16 (on December 9, 2019, Defendant Vaid continued the Keflex prescription that NMC had issued the day before), ¶¶ 19–21 (on March 25, 2020, Defendant Vaid advised Mr. Souza to complete the ten-day course of Keflex treatment recommended by NMC on March 19, and ordered by non-defendant Dr. Lam that same day). Contrary to Mr. Souza's representations in the Complaint, Defendant Vaid did not prescribe him Keflex four times, and did not prescribe it at all after Mr. Souza received his C. diff diagnosis. *See generally* Vaid Decl.

To state a claim against Defendant Vaid, Mr. Souza must show that the treatment she prescribed was medically unacceptable. He cannot.

First, a non-defendant doctor has opined that Defendant Vaid's sole prescription of Keflex on May 7, 2020, was a medically acceptable course of treatment. Singh Decl. ¶ 9. The introduction of this opinion shifts the burden to plaintiff to produce an expert opinion that Defendant Vaid's care was improper. *See Griffin v. Gregoline*, 727 F. App'x 397, 398 (9th Cir. 2018) ("The district court properly granted summary judgment [to defendant] . . . because [plaintiff] failed to introduce expert testimony and therefore failed to establish a genuine dispute of material fact . . . ."). Mr. Souza does not introduce any evidence to suggest that the administration of Keflex to treat an infection was medically unacceptable. Without testimony that this treatment was unacceptable, Dr. Singh's assessment that Defendant Vaid acted within the standard of care is undisputed, and Mr. Souza fails to carry his burden.

Second, on the two other instances where Mr. Souza met with Defendant Vaid and came away with a Keflex prescription, she was only continuing a course of treatment begun by another medical professional. *See* Vaid Decl. ¶¶ 13–16 (continuing NMC's Keflex prescription), ¶¶ 19–21 (continuing Dr. Lam's Keflex prescription). That Defendant Vaid continued a course of treatment begun by another medical professional necessarily means that the course of treatment was acceptable to that other professional. Mr. Souza did not introduce any evidence to show that the treatment was not acceptable, and thus failed to rebut Defendants' evidence. *See Griffin*, 727 F. App'x at 398.

It appears that Mr. Souza has a mere difference of opinion about appropriate medical treatment. A difference of opinion does not amount to deliberate indifference to a serious medical need. *See Toguchi*, 391 F.3d at 1059–60 (holding that a showing of a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference); *Franklin*, 662 F.2d at 1344 (same). To prevail on a claim that involves choices between alternative courses of treatment, a plaintiff must show that the course of treatment the medical staff chose was medically unacceptable. *Toguchi*, 391 F.3d at 1058. Mr. Souza has not done so, and his Eighth Amendment claim therefore fails as to Defendant Vaid.

### B.     Defendant Flores

Mr. Souza's claim against Defendant Flores is predicated upon his claim against Defendant Vaid. Specifically, Mr. Souza argues that Defendant Flores should have reported Defendant Vaid's unacceptable treatment to a "higher authority." Compl. at 4. As explained above, however, Defendant Vaid's treatment of Mr. Souza was not medically unacceptable.

Nor does the record suggest that there was any delay or absence of treatment for Nurse Flores to report. Mr. Souza's medical records show that he received prompt treatment after his first C. diff diagnosis. He was diagnosed with C. diff at NMC on October 13, 2020, and stayed at NMC until October 20. *See* Vaid Decl. ¶ 26. Mr. Souza was seen by another physician at SVSP on the same day that he was discharged from NMC, *id*. ¶ 27, and when symptoms recurred, he was promptly referred back to NMC, *id*. ¶ 28. Mr. Souza was seen by Defendant Vaid twice in the

8

week after his second discharge from NMC; his C. diff treatment was continued, and he was additionally referred to a specialist. *Id*. ¶¶ 28–30. By early December, Mr. Souza's C. diff symptoms had resolved. *Id*. ¶ 31; Singh Decl. ¶ 8. Because Mr. Souza received prompt medical care, which multiple doctors found medically acceptable, there was nothing for Defendant Flores to report.

In sum, Mr. Souza has not shown that either Defendant pursued a medically unacceptable course of treatment, and Defendants have introduced evidence that their treatment was medically acceptable. Because there is no evidence that Defendants were deliberately indifferent to Mr. Souza's medical needs or pursued medically unacceptable treatment at risk to Mr. Souza's health, his Eighth Amendment claims fail. *See Toguchi*, 391 F.3d at 1058.

## CONCLUSION

Defendants' motion for summary judgment is **GRANTED**. The Clerk shall terminate all pending motions and close the file.

**IT IS SO ORDERED.**

Dated: March 13, 2024

P. Casey Pitts
United States District Judge